❐ Original        ❐

CLERK'S OFFICE
A TRUE COPY
Jul 27, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Facebook account associated with user name "Alexander Kasper" and Facebook URL https://www.facebook.com/alexander.kasper.31, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **22-M-513 (SCD)**

Matter No. 2021R00182

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     8-10-22     *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries     .
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*     ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     7-27-22 9:20 am

*Judge's signature*

City and state:   Milwaukee, Wisconsin          Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2021R00182

This warrant applies to information associated with Facebook account associated with user name "Alexander Kasper" and Facebook URL https://www.facebook.com/alexander.kasper.31 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2021R00182**

I. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2022, to present;

    (c)    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from January 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

    (d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user from January 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2022, to present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)     Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of in violation of Title 21 United States Code Sections 841(a)(1) and 846, involving Alexander KASPER and "Li", Shawn SENTER, Shelton THORNTON, Skylar TRUMBO, Kevin ESIENHAUER, Jason WNUK, and other known and unknown individuals since January 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The sale of illegal drugs, any preparatory steps taken in furtherance of the criminal scheme, and communications between Alexander KASPER, and others related to the relevant offense conduct of the sale of illegal drugs.

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).



CLERK'S OFFICE
A TRUE COPY
Jul 27, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Facebook account associated with user name "Alexander Kasper" and Facebook URL https://www.facebook.com/alexander.kasper.31, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **22-M-513 (SCD)**

Matter No. 2021R00182

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute and possession with intent to distribute controlled substances, and distribution and possession with intent to distribute controlled substances. |

The application is based on these facts:

Please see attached affidavit, which is hereby incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DCI SA Mitchell Ward
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: 7-27-22

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT
# MATTER NUMBER 2021R00182

I, Mitchell G Ward, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrant for information associated with the following Facebook user "Alexander Kasper [https://www.facebook.com/alexander.kasper.31] that is stored at premises owned, maintained, controlled, or operated by Meta Platform Inc., ("Meta") a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A and B. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platform Inc to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation, (DCI) and have been a sworn officer in the State of Wisconsin for over 30 years. I am currently assigned to DCI's Milwaukee Field Office, Narcotics Bureau. I am also a federally deputized task force officer for the United States Postal Inspection Service ("USPIS"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws

governing the use and movement of the United States Mail, including the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, narcotics trafficking and identity theft involving the United States Mail.

4.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.  I have had formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a.     I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

   c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

   e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

   f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. Based on my training, experience and discussions with United States Postal Inspectors and North Central (formerly Wisconsin) High Intensity Drug Trafficking Area-HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

6. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. I am currently participating in an investigation of a large-scale ketamine, MDMA and marijuana drug trafficking organization ("DTO") led by "Li" who traffics controlled substances from New York throughout the United States. One of "Li's" co-conspirators in Wisconsin is Shawn SENTER (a/k/a "Shaggy"), herein referred to as SENTER, who distributes controlled substances in Wisconsin, Illinois, and Colorado. I am familiar with the facts and

circumstances regarding this investigation as a result of my personal participation in this investigation, and my knowledge of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) court authorized forensic extractions of DTO members' cellular phones; and (d) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

8.      Based on the facts set forth in this affidavit, there is probable cause that the possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of Title 21 United States Code Sections 841(a)(1) and 846, have been committed by "Li", Shawn SENTER, Shelton THORNTON, Skylar TRUMBO, Kevin ESIENHAUER, Jason WNUK, Alexander KASPER,  and other known and unknown individuals.

9.      This affidavit is submitted in support of an application for a search warrant for KASPER's Facebook Account, for evidence of KASPER's and others' involvement in the above-described offenses between January 1, 2022, to present.  More specifically, I seek authorization to search Facebook's information associated with KASPER, who is the user associated with the Facebook accounts with the following usernames and ID numbers:

| FACEBOOK NAME | FACEBOOK URL |
| --- | --- |
| Alexander Kasper | https://www.facebook.com/alexander.kasper.31 |

**<u>INVESTIGATION</u>**

10.     Case agents have been investigating a Wisconsin, Illinois, and Colorado drug trafficking organization (DTO) led by Shawn SENTER, known as "Shaggy."  SENTER utilizes a variety of communication applications to distribute narcotics including Instagram, Signal, Facebook Messenger, and others.  SENTER is also involved in distributing large amounts of Ketamine, Acid, MDMA (Molly), and marijuana.  Several other members of SENTER's DTO have been identified.  Through a forensic phone extraction, interviews and debriefs of cooperating witnesses, case agents learned that one of SENTER's suppliers is a New York-based Asian male known only as "Li."   SENTER has distributed large amounts of ketamine, MDMA and marijuana to several known and unknown distributors in southeast Wisconsin, northern Illinois and Colorado including Skylar TRUMBO, Kevin ESIENHAUER, Jason WNUK, Jeff STAR and Shelton THORNTON.

11.     On March 10, 2022, case agents stopped SENTER at a gas station located in Kenosha, Wisconsin and executed a federal search warrant upon his 2019 Toyota 4Runner (WI AFB 6486).  Case agents recovered approximately 23 kilograms of Ketamine, 3.5 kilograms of MDMA, SENTER's iPhone and other evidentiary items.  Case agents also executed a search warrant at SENTER's home on March 10, 2022.  Case agents recovered a Glock 17 with a "Glock Switch" making the pistol a fully automatic machine gun, over $7,000 cash, approximately 50 grams of MDMA, 5 pounds of high-grade marijuana, and over 800 pills of MDMA and LSD.

12.     On March 10, 2022, case agents conducted mirandize interview of SENTER.  Case agents showed SENTER a photo of Shelton THORNTON.  SENTER positively identified THORNTON as drug dealer living in the Denver, Colorado area.  SENTER stated THORNTON currently owes him $30,000 regarding a drug debt for a kilogram of ketamine.  SENTER also stated THORNTON is his source for LSD.  Case agents obtained a forensic extraction of

SENTER's phone, which was recovered at the time of his arrest. A review of SENTER's phone shows over 50 text conversations via private messaging applications, including Facebook Messenger communications between SENTER and THORNTON.

13. Case agents have recovered numerous Facebook Messaging Strings directly related to drug trafficking from forensic examination of suspect phones recovered during the investigation. The forensic examinations show that several members of the DTO, including THORNTON utilize Facebook Messenger to communicate with each other regarding drug trafficking. Case Agents conducted an open search of Facebook and located Alexander KASPER's, Shelton THORNTON's, and Nikolas Kasper's Facebook accounts. Alexander KASPER and THORNTON's Facebook friends are not visible in an open search. However, Nikolas Kasper's friend list is visible. Case agents were able to determine that Nikolas Kasper is Facebook friends with Alexander KASPER and Shelton THORNTON.

14. On April 19, 2022, case agents learned a parcel weighing 1 pound, five ounces had been mailed to "Shelton THORTON 294 Red Tail Trail Evergreen, CO 80439" from "Sam Wilson 6830 Forest Ave Ridgewood, NY 11385." Ridgewood is a neighborhood within the borough of Queens, NY. The shipping costs for this parcel were paid in cash. This package was not intercepted by postal inspectors at the time.

15. On April 26, 2022, case agents obtained a search warrant signed by Untied States Magistrate Judge Stephen Dries. The warrant authorized the search of the parcel weighing 1.5 pounds, address from "Sam Wilson" from Ridgewood, New York to Shelton Thornton in Colorado. A search of the parcel revealed the package contained one half kilogram of ketamine contained inside a "Swiss Miss" hot chocolate mix box.

16. On June 23, 2022, case agents identified an identical parcel from "Sam Wilson" in route to Portland, Oregon. USPIS Inspectors in Portland obtained and executed a federal search warrant upon this parcel. This parcel also contained one half kilogram of ketamine that was packaged inside a "Swiss Miss" hot chocolate mix box.

17. Case agents discovered there have been numerous electronic inquiries made regarding the above-mentioned parcels from the IP address of 100.38.7.45. This IP address indicates it is in Ridgewood, NY. It is common practice for drug traffickers utilizing the USPS to electronically track their drug shipments. Drug traffickers will often not accept late packages fearing their illegal activity has been discovered by law enforcement. Upon researching UPSPIS databases, case agents have identified a total of ten packages mailed from "Sam Wilson" in the past six months. These packages all appear to be of similar weight and appear to have been addressed in the same handwriting.

18. In addition to the two above-mentioned parcels containing ketamine, case agents discovered USPIS Inspectors assigned to the Phoenix Division obtained and executed a federal search warrant on a parcel from "Sam Wilson" on February 3, 2022. This parcel also contained approximately one-half kilogram of ketamine also packaged in a "Swiss Miss" hot chocolate mix box. Nine of the ten parcels identified have been mailed from the same two post offices located two miles apart in Ridgewood, New York.

19. On June 30, 2022, case agents interviewed a confidential source (CI-1) regarding this investigation. CI-1 positively identified a photo of THORNTON. CI-1 knows THORNTON currently lives in Colorado and traffics ketamine. CI-1 knows THORNTON has multiple ketamine suppliers including SENTER and an individual known to CI-1 as "Kasper." CI-1 is aware "Kasper" lives in New York City and supplies THORNTON with kilograms of ketamine. USPIS

databases show KASPER currently resides at 6830 Forest Avenue #3, Ridgewood, New York 11385.

20. CI-1 is credible and reliable because CI-1 has provided intelligence concerning drug trafficking activities for SENTER that have been independently corroborated through queries of law enforcement databases, law enforcement investigations and information gathered from Shawn SENTER's phone. CI-1 has also made statements against his/her own penal interests. CI-1 has no felony convictions. CI-1 has no arrests or convictions relating to dishonesty. CI-1 is cooperating with law enforcement in exchange for consideration regarding felony drug trafficking offenses.

21. CI-1 positively identified a Facebook profile picture of Alexander KASPER as the same "Kasper" who supplies THORNTON with ketamine. Case agents were able to determine KASPER has a Facebook account with the username "Alexander Kasper" and URL of https://www.facebook.com/alexander.kasper.31.



## FACEBOOK INFORMATION

22.     Case agents believe the Facebook content sought and outlined in Attachment B are evidence relating to this investigation are available to Meta.

23.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

24.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

25.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

26.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

27. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

28. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

29. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and retains transactional records related to voice and video chats of the date of each call. Facebook users can also post comments on the Facebook profiles of other users

or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

30. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

31. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

32. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

33. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

34. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

35. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

36. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

37. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

38. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged

photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

40. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including

the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

42.　　This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## CONCLUSION

43.　　Based on the foregoing, I request that the Court issue the proposed search warrant.

44.　　Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2021R00182

This warrant applies to information associated with Facebook account associated with user name "Alexander Kasper" and Facebook URL https://www.facebook.com/alexander.kasper.31 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2021R00182**

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2022, to present;

(c)    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from January 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user from January 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from January 1, 2022, to present;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)     Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of in violation of Title 21 United States Code Sections 841(a)(1) and 846, involving Alexander KASPER and "Li", Shawn SENTER, Shelton THORNTON, Skylar TRUMBO, Kevin ESIENHAUER, Jason WNUK, and other known and unknown individuals since January 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs, any preparatory steps taken in furtherance of the criminal scheme, and communications between Alexander KASPER, and others related to the relevant offense conduct of the sale of illegal drugs.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).